JMS:SSA/DEL
F. #2021R00774

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br>  1.) ONE BLACK SAMSUNG GALAXY<br>      CELL PHONE WITH IMEI<br>      NUMBER 350603978059837;<br>  2.) ONE BLACK IPHONE WITH IMEI<br>      NUMBER 356696089090778; AND<br>  3.) ONE HD WIFI CAR DIGITAL<br>      VIDEO DVR CAMERA;<br>ALL CURRENTLY IN THE POSSESSION<br>OF LAW ENFORCEMENT | **APPLICATION FOR A SEARCH WARRANT FOR ELECTRONIC DEVICES**<br><br><br>Case No. 21-MJ-1037 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, JOSEPH LOECHER, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.　　I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—three electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B, all of which constitute evidence or instrumentalities of violations of Title 18, United States Code Sections 1343 and 1349 (fraud by wire, radio, or television and conspiracy to commit that offense); Title 18, United States Code, Sections 1028(a)(1), 1028(c)(3)(A), 1028(c)(3)(B), 1028(b)(1)(A)(ii) and 1028(f) (unlawful production of identification documents and conspiracy to commit that offense) and Section 371 (conspiracy to commit an offense against the United States); and Title 18, United States Code, Section 1951 (Hobbs Act robbery) (the "Subject Offenses").

2.      I have been a Special Agent with the Federal Bureau of Investigation ("FBI")
since 2020 and am currently assigned to the FBI's Eurasian Organized Crime Task Force, where
I participate in investigations involving organized crime, fraud and violent crime.  In these
investigations, I conduct or participate in surveillance, execute search warrants, including on
electronic devices, debrief informants and review recorded conversations.

3.      The facts in this affidavit come from my personal observations, my training and
experience, and information obtained from other law enforcement officers and witnesses,
including "John Doe-1" and "John Doe-2."  This affidavit is intended to show only that there is
sufficient probable cause for the requested warrant and does not set forth all of my knowledge
about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4.      The property to be searched is: ONE BLACK SAMSUNG GALAXY CELL
PHONE WITH IMEI NUMBER 350603978059837, seized from RUSLAN SADIKHOV
incident to his arrest on September 2, 2021; ONE BLACK IPHONE WITH IMEI NUMBER
356696089090778, seized from RUSLAN SADIKHOV incident to his arrest on September 2,
2021; and ONE HD WIFI CAR DIGITAL VIDEO DVR CAMERA seized from SADIKHOV's
vehicle pursuant to a search warrant on September 2, 2021 (collectively, the "Devices").

5.       The Devices are in the custody of the FBI and are currently located in the Eastern
District of New York.  The Devices are further described in Attachment A and photographs of
the Devices appear in Attachment A.

6.      The applied-for warrant would authorize the forensic examination of the Devices
for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7.     On or about September 2, 2021, law enforcement agents arrested RUSLAN

SADIKHOV pursuant to a complaint and arrest warrant signed by the Honorable Marcia M.

Henry.  The combined affidavit in support of an arrest warrant and application under Rule 41 for

a warrant to search and seize (21-MJ-1017) (the "Prior Affidavit") is attached hereto as Exhibit

A, and all factual allegations from Exhibit A are incorporated by reference.  Upon SADIKHOV's

arrest, agents recovered two of the Devices (the two cell phones) from SADIKHOV's person.

Pursuant to the warrant signed by Judge Henry, agents also recovered the third Device (the

camera) from SADIKHOV's vehicle.

8.     As detailed in the Prior Affidavit, the FBI is investigating a group of individuals

who are conspiring to compromise the integrity of the examination process for the issuance of

commercial driver's licenses ("CDLs") and permits by the Department of Motor Vehicle

("DMV").  The investigation has identified SADIKHOV as a part of a conspiracy to assist

applicants in cheating on written CDL tests (the "CDL Test").  To do so, he gave applicants

electronic equipment, including earpieces, wires, small cameras, and cell phones, to take into the

testing locations.  Applicants were provided correct answers to the CDL Test through this

equipment.

9.     According to investigators from the DMV's Division of Field Investigations

("DFI")[1], on April 14, 2021, supervisors at a DMV testing location on Long Island, New York

---

[1] DFI investigators are peace officers who perform fraud detection, undercover and
counter-terrorism assignments, investigate identity theft and uncover auto-theft rings, among
other things.  Utilizing facial recognition technology and forensic vehicle examinations,
Investigative Specialists perform a variety of criminal investigations, field inspections,

observed an applicant taking the CDL Test ("John Doe-1").  The supervisors believed John Doe-1 was cheating, because he was at the testing location for almost three hours and appeared to be speaking under his face mask, which he was wearing to comply with COVID-19 protocols.  DFI investigators entered the room, observed John Doe-1, and asked him to come to the DFI offices. John Doe-1 showed the investigators that he was wearing a wire taped to his neck that was connected to a cell phone in his pocket (the "Test Device").  John Doe-1 also stated he was wearing a very small earpiece in his ear that he was unable to remove with his fingers.

10.     John Doe-1 admitted to investigators that he was cheating on the CDL Test.  John Doe-1 explained that he had been given the Test Device and other equipment, and by using that equipment, an individual was able to view John Doe-1's test questions and then relayed the correct answers to John Doe-1.  DFI investigators confiscated the Test Device and the wire from John Doe-1.

11.     Law enforcement agents subsequently obtained a warrant to search the Test Device.  The contents of the Test Device, including messages, videos, photographs and documents, demonstrated that the Test Device was used by SADIKHOV in or about and between April 2020 and April 2021.  For instance, the Test Device contained images of SADIKHOV's identification documents, including his New York State driver's license, social security administration card and income tax returns.  The Test Device also contained what I recognize to be photographs and videos of SADIKHOV, as compared to known photographs and physical surveillance of him.  Messages on the Test Device, in several languages, including Russian,

---

inventories of seized properties, odometer fraud, identity verification, fraudulent document detection, vehicle theft examinations and security evaluations.

English and Uzbek, were addressed to "Ruslan."  In addition, the Test Device contained approximately 30 conversations via text message or Telegram, in which the owner and operator of the Test Device, whom I believe to be SADIKHOV, described the cheating operation and indicated that his assistance in passing the CDL Test cost $700.  At least one video on the Test Device depicted SADIKHOV in his vehicle operating cameras and other detection devices.

12.     Later that day, another individual ("John Doe-2") reported to NYPD officers that he was robbed at gunpoint by an individual he knew as "Ruslan" after he and a friend had paid "Ruslan" to help them cheat on the CDL Test earlier that day.  John Doe-2 stated he and his friend, whom he did not identify to the officers by name, had contacted "Ruslan" via Telegram, an encrypted messaging application.  John Doe-2 explained that his friend was caught cheating on the CDL Test on April 14, 2021, and John-Doe-2 believed that in retaliation, "Ruslan" called John Doe-2 multiple times that night until John Doe-2 agreed to meet with "Ruslan."  According to John Doe-2, "Ruslan" appeared outside John Doe-2's residence in Brooklyn, New York, and demanded John Doe-2 get inside of a black Toyota Camry.  John Doe-2 stated that "Ruslan" pointed a black firearm at John Doe-2 and demanded that John Doe-2 withdraw $800 from a Chase Bank branch, in Brooklyn, New York, or "Ruslan" would shoot him.  John Doe-2 complied, withdrew the money from his bank account and gave it to "Ruslan."

13.     John Doe-2 provided a phone number used by "Ruslan," which ended in -6448 (the "6448 Number").  According to records obtained by subpoena from Lyft Inc., the 6448

Number is registered to SADIKHOV, who is a registered driver for Lyft.  Accordingly, there is probable cause to believe "Ruslan" is the defendant RUSLAN SADIKHOV.[2]

14.     During the course of the investigation, law enforcement executed a search warrant at SADIKHOV's residence during which they recovered numerous electronic devices, including cameras, consistent with SADIKHOV's operation of the CDL scheme. Accordingly, there is probable cause to believe that the Devices described herein contain evidence of SADIKHOV's scheme, including its participants and methods of cheating, as well as evidence of SADIKHOV's threats against and robbery of John Doe-2.

15.     The Devices are currently in the lawful possession of the FBI and have been since SADIKHOV's arrest on September 2, 2021.  The Devices are currently located in the Eastern District of New York.

16.     I know that the Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of law enforcement.

## TECHNICAL TERMS

17.     Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.   Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of

---

[2] Agents will not be able to confirm whether one of the Devices is assigned the 6448 Number until searching the Devices.

transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video,

or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication

devices and are used to access the Internet and send and receive e-mail.  PDAs
usually include a memory card or other removable storage media for storing data
and a keyboard and/or touch screen for entering data.  Removable storage media
include various types of flash memory cards or miniature hard drives.  This
removable storage media can store any digital data.  Most PDAs run computer
software, giving them many of the same capabilities as personal computers.  For
example, PDA users can work with word-processing documents, spreadsheets,
and presentations.  PDAs may also include global positioning system ("GPS")
technology for determining the location of the device.

f.   IP Address: An Internet Protocol address (or simply "IP address") is a unique
numeric address used by computers on the Internet.  An IP address is a series of
four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).
Every computer attached to the Internet computer must be assigned an IP address
so that Internet traffic sent from and directed to that computer may be directed
properly from its source to its destination.  Most Internet service providers control
a range of IP addresses.  Some computers have static—that is, long-term—IP
addresses, while other computers have dynamic—that is, frequently changed—IP
addresses.

g.   Internet: The Internet is a global network of computers and other electronic
devices that communicate with each other.  Due to the structure of the Internet,
connections between devices on the Internet often cross state and international
borders, even when the devices communicating with each other are in the same
state.

18.     Based on my training, experience, and research, I know that the Devices variously have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

20.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

10

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.   The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21.   *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22.   *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

11

## **CONCLUSION**

23.    I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the Devices described in Attachment A to seek the items

described in Attachment B.

Respectfully submitted,

JOSEPH LOECHER
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on September 8, 2021:

*Vera M. Scanlon*

HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

12

<u>**ATTACHMENT A**</u>

1.      The property to be searched is: ONE BLACK SAMSUNG GALAXY CELL

PHONE WITH IMEI NUMBER 350603978059837, seized from RUSLAN SADIKHOV

incident to his arrest on September 2, 2021; ONE BLACK IPHONE WITH IMEI NUMBER

356696089090778, seized from RUSLAN SADIKHOV incident to his arrest on September 2,

2021; and ONE HD WIFI CAR DIGITAL VIDEO DVR CAMERA seized from SADIKHOV's

vehicle pursuant to a search warrant on September 2, 2021 (collectively, the "Devices").

Photographs of the Devices appear below:



BLACK SAMSUNG GALAXY CELL PHONE WITH IMEI NUMBER 350603978059837



BLACK IPHONE WITH IMEI NUMBER 356696089090778



HD WIFI CAR DIGITAL VIDEO DVR CAMERA

   This warrant authorizes the forensic examination of the Devices for the purpose of

identifying the electronically stored information described in Attachment B.  Because the

Devices are already in the possession of law enforcement, the warrant to search the Devices authorizes the examination of the Devices at any time of the day or night.

**ATTACHMENT B**

1.      All records on the Devices described in Attachment A that constitute evidence, fruits and/or instrumentalities of violations of Title 18, United States Code Sections 1343 and 1349 (fraud by wire, radio, or television and conspiracy to commit that offense); Title 18, United States Code, Sections 1028(a)(1), 1028(c)(3)(A), 1028(c)(3)(B), 1028(b)(1)(A)(ii) and 1028(f) (unlawful production of identification documents and conspiracy to commit that offense) and Section 371 (conspiracy to commit an offense against the United States); and Title 18, United States Code, Section 1951 (Hobbs Act robbery) (collectively, the "Subject Offenses"), including:

   a.   Content including text messages, multimedia messages, direct messages;

   b.   Call logs;

   c.   Any files related to a scheme to fraudulently obtain commercial drivers licenses (the "CDL test taking scheme");

   d.   Any messages, calls, or files related to RUSLAN SADIKHOV's gunpoint robbery of John Doe-2 on April 14, 2021;

   e.   Billing and payment records, including records from credit card companies, PayPal and other electronic payment services, reflecting access to websites pertaining to the Subject Offenses;

   f.   Address books, names, lists of names and addresses of individuals believed to be participating in the CDL test taking scheme;

   g.   Evidence of user attribution showing who used or owned the Devices at the time of the Subject Offenses, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

h. Records evidencing the use of the Devices' Internet Protocol addresses to communicate with co-conspirators, including:

    i. records of Internet Protocol addresses used;

    ii. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

    iii. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigative agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

2

# EXHIBIT A

JMS:DEL/SSA
F. #2021R00774

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ARREST WARRANT FOR RUSLAN SADIKHOV AND FOR A SEARCH WARRANT FOR THE PREMISES KNOWN AND DESCRIBED AS A 2020 BLACK TOYOTA CAMRY WITH NEW YORK LICENSE PLATE T709049C, AND ANY CLOSED CONTAINERS AND CLOSED ITEMS FOUND THEREIN | **TO BE FILED UNDER SEAL**<br><br>C O M P L A I N T  A N D  A P P L I C A T I O N  F O R  A  S E A R C H  W A R R A N T<br><br>(18 U.S.C. § 1349)<br><br>21 MJ 1017 |

**AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT
AND AN APPLICATION UNDER RULE 41
FOR A WARRANT TO SEARCH AND SEIZE**

Joseph Loecher, being duly sworn, deposes and states that he is a Special

Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and

acting as such.

Upon information and belief, in or about and between January 2021 and

September 2021, both dates being approximate and inclusive, within the Eastern District of

New York and elsewhere, the defendant RUSLAN SADIKHOV, together with others, did

knowingly and intentionally conspire to devise a scheme and artifice to defraud the New

York State Department of Motor Vehicles ("DMV"), and to obtain property from the DMV

by means of one or more materially false and fraudulent pretenses, representations and

promises, and for the purpose of executing such scheme and artifice, to cause to be deposited

in any post office and authorized depository for mail matter, any matter and thing to be sent

and delivered by the Postal Service, contrary to Title 18, United States Code, Section 1341.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

<u>INTRODUCTION</u>

A.      <u>Affiant and Purpose of Affidavit</u>

1.      I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since 2020 and am currently assigned to the FBI's Eurasian Organized Crime Task Force, where I participate in investigations involving organized crime, fraud and violent crime.   In these investigations, I conduct or participate in surveillance, execute search warrants, including on electronic devices, debrief informants, and review recorded conversations.

2.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses.   This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.      This affidavit is submitted in support of an application for an arrest warrant for RUSLAN SADIKHOV for violations of Title 18, United States Code, Section 1349 (conspiracy to commit mail fraud), and for an application for a search warrant under Federal Rule of Criminal Procedure 41, authorizing the search of a 2020 black Toyota Camry with New York license plate T709049C, including the trunk and any locked and/or closed containers (the "Target Vehicle"), as described in Attachment A, for the items and information described in Attachment B.   As explained below, there is probable cause to believe that the Target Vehicle contains evidence, fruits and instrumentalities of violations of Title 18, United States Code, Sections 1341 and 1349 (mail fraud and conspiracy to commit mail and wire fraud) and 1951(a) (Hobbs Act robbery) (collectively, the "Subject Offenses").

B.     The Fraudulent Scheme Investigation

4.     The FBI is investigating a group of individuals who are conspiring to compromise the integrity of the examination process for the issuance of commercial driver's permits and licenses by the DMV.

5.     The law of the State of New York requires that drivers of certain types of commercial vehicles, such as large buses, trucks and trailers, possess a commercial driver's license ("CDL").   The DMV issues CDLs in the State of New York, in accordance with regulations issued by the United States Department of Transportation.   Holders of CDLs issued by the DMV are authorized to drive such commercial vehicles in interstate and foreign commerce.

6.     Applicants seeking a CDL from the DMV are required to, among other things, pass a test (the "CDL Test") covering various subjects related to safely driving large vehicles.   The CDL Test is in a multiple-choice format and is administered at a computer terminal with a monitor that displays the questions at various approved locations.   The sequence of the multiple-choice questions on the CDL Test is randomized by the DMV's testing software.

7.     Applicants seeking a CDL from the DMV are also required to complete an application form.   Above the space on the application form where the applicant is required to sign his or her name is a warning that making a false statement in connection with the application is a crime.

8.     Once an applicant passes the CDL Test, the applicant is eligible to take the CDL road test (the "CDL Road Test") in which the applicant must exhibit their ability to safely drive an oversized vehicle on the road.   Upon successfully passing the CDL Road

Test and waiting at least one business day, the applicant is permitted to obtain from a DMV office a temporary CDL, which is valid for 90 days.   Approximately three or four weeks after the issuance of a temporary CDL, the DMV mails, by the United States Postal Service, the applicant a permanent CDL bearing the applicant's photograph.

9.     The investigation has identified RUSLAN SADIKHOV as a part of a conspiracy to assist applicants in cheating on written CDL Tests, thus procuring a CDL by fraud, which CDL was sent via the Postal Service.

10.     According to investigators from the DMV's Division of Field Investigations ("DFI")[1], on April 14, 2021, supervisors at a DMV testing location on Long Island, New York observed an applicant taking the CDL Test ("John Doe-1").   The supervisors believed John Doe-1 was cheating, because he was at the testing location for almost three hours and appeared to be speaking under his face mask, which he was wearing to comply with COVID-19 protocols.   DFI investigators entered the room, observed John Doe-1, and asked him to come to the DFI offices.   John Doe-1 showed the investigators that he was wearing a wire taped to his neck that was connected to a cell phone in his pocket (the "Device").   John Doe-1 also stated he was wearing a very small earpiece in his ear that he was unable to remove with his fingers.

11.     John Doe-1 admitted to investigators that he was cheating on the CDL Test.   John Doe-1 explained that he had been given the Device and other equipment, and by

---

[1] DFI investigators are peace officers who perform fraud detection, undercover and counter-terrorism assignments, investigate identity theft and uncover auto-theft rings, among other things.   Utilizing facial recognition technology and forensic vehicle examinations, Investigative Specialists perform a variety of criminal investigations, field inspections, inventories of seized properties, odometer fraud, identity verification, fraudulent document detection, vehicle theft examinations and security evaluations.

using that equipment, an individual was able to view John Doe-1's test questions and then relayed the correct answers to John Doe-1.   DFI investigators confiscated the Device and the wire from John Doe-1.

C.   <u>SADIKHOV Retaliates for the Loss of the Device</u>

12.   Later that day, another individual ("John Doe-2") reported to NYPD officers that he was robbed at gunpoint by an individual he knew as "Ruslan" after he and a friend had paid "Ruslan" to help them cheat on the CDL Test earlier that day.   John Doe-2 stated he and his friend, whom he did not identify to the officers by name, had contacted "Ruslan" via Telegram, an encrypted messaging application.   John Doe-2 explained that his friend was caught cheating on the CDL Test on April 14, 2021, and John-Doe-2 believed that in retaliation, "Ruslan" called John Doe-2 multiple times that night until John Doe-2 agreed to meet with "Ruslan."   According to John Doe-2, "Ruslan" appeared outside John Doe-2's residence in Brooklyn, New York, and demanded John Doe-2 get inside of a black Toyota Camry, the same make and model as the Target Vehicle.   John Doe-2 stated that "Ruslan" pointed a black firearm at John Doe-2 and demanded that John Doe-2 withdraw $800 from a Chase Bank branch, in Brooklyn, New York, or "Ruslan" would shoot him.   John Doe-2 complied, withdrew the money from his bank account and gave it to "Ruslan."

13.   John Doe-2 provided a phone number used by "Ruslan," which ended in -6448 (the "6448 Number").   According to records obtained by subpoena from Lyft Inc., the 6448 Number is registered to the defendant RUSLAN SADIKHOV, who is a registered driver for Lyft.   Accordingly, there is probable cause to believe "Ruslan" is the defendant RUSLAN SADIKHOV.

D.  The SADIKHOV Device

14.  Law enforcement officers obtained the Device from DMV and conducted a search of the Device pursuant to a judicially authorized search warrant.   The contents of the Device, including messages, videos, photograph and documents, demonstrated that the Device was used by the defendant RUSLAN SADIKHOV in or about and between April 2020 and April 2021.   For instance, the Device contained images of SADIKHOV's identification documents, including his New York State driver's license, social security administration card and income tax returns.   The Device also contained what I recognize to be photographs and videos of SADIKHOV, as compared to known photographs and physical surveillance of him.   Messages on the Device, in several languages, including Russian, English and Uzbek, were addressed to "Ruslan."

15.  The contents of the Device, as well as the circumstances under which it came to be in law enforcement's custody, also demonstrate that SADIKHOV used the Device in the scheme to assist others in fraudulently obtaining a CDL.   As explained above, John Doe-1 provided the Device to DFI Investigators after he admitted the Device enabled him to cheat on the CDL Test.   In addition, the Device contained approximately 30 conversations via text message or Telegram, in which the user of the Device, whom I believe to be SADIKHOV, described the cheating operation and indicated that his assistance in passing the CDL Test cost $700.

16.  As demonstrated by messages, photographs and videos found on the Device, as well as my understanding from my training, experience and participation in other CDL fraud investigations, SADIKHOV provided CDL applicants with a small camera to attach on the applicant's shirt through which SADIKHOV or another co-conspirator could

view the CDL Test questions as they appeared in real time.   SADIKHOV or another co-conspirator who were located outside the testing location would view the questions via the hidden camera in order to determine the correct answers through their experience or by using the DMV Testing manual.   SADIKHOV or another co-conspirator would then provide the correct answer to each question to the applicant through a small earpiece,[2] which was connected to a cell phone or other device hidden somewhere on the applicant's body via Bluetooth technology.

17.     The Device also contained approximately 20 screenshots showing DMV confirmations for CDL Test appointments, which were scheduled to take place in or about and between September 2020 and April 2021.   The image of the confirmation variously included the applicant's name, the location, date and time of the appointment, and the applicant's reservation number.

E.     Search of the Defendant's Apartment

18.     On or about August 18, 2021, NYPD officers conducted a search of an apartment located at the Tysens Park Apartments in Staten Island (the "Apartment"), after a resident of the Apartment consented in writing to the officers' search.   In that search, NYPD officers located personal effects and other identification documents for the defendant RUSLAN SADIKHOV, including a driver's license, New York City identification card, social security card and various credit and debit cards in his name, which demonstrated he also resided in the Apartment.   Within the Apartment, officers also located items which, in

---

[2]    In my training, experience and participation in this and other investigations, to escape detection by the DMV, the applicant's earpiece is so small that it has to inserted and removed with a magnet or tweezers.

my training and experience, are used in the CDL Test scheme, including multicolored earphones, magnets, battery packs, multicolored cameras and a device used to detect hidden cameras and other covert electronic equipment.   (Notably, officers did not locate a black firearm in the search of the Apartment.)

19.   There is probable cause to believe SADIKHOV was using the items seized in the CDL Test scheme.   For example, as explained, magnets can be used to insert and remove the earpieces for the applicants because of the earpieces' small size.   Based on my training and experience, I understand battery packs can be used as portable charging devices to power phones or other devices to enable a coconspirator to communicate with an applicant.   In light of a video saved on the Device, as well as my training and experience, I understand the device used to detect hidden cameras and other covert electronic equipment can be used as a counter-surveillance device to determine whether DMV personnel would locate any hidden cameras or other devices if searching for them.

F.   The Target Vehicle

20.   The Target Vehicle is a 2020 black Toyota Camry with New York license plate T709049C.   According to records obtained by the New York City Police Department ("NYPD") Department of Motor Vehicles, the Target Vehicle is owned by Venture Leasing LLC, based in the Bronx, New York, which appears to be a taxi service, according to public records.   Records on the Device, including insurance and registration records, show that the defendant RUSLAN SADIKHOV has insurance on the Target Vehicle through the name Venture Leasing LLC.   In addition, an NYPD accident report dated June 19, 2020, shows SADIKHOV was the driver of the Target Vehicle, which is registered to

Venture Leasing LLC.   Furthermore, according to Lyft records obtained by subpoena, SADIKHOV has engaged in numerous Lyft fares with the Target Vehicle.

21.     In addition to the information set forth above, there is probable cause to believe the defendant RUSLAN SADIKHOV uses the Target Vehicle to engage in the Subject Offenses.

22.     For instance, on April 14, 2021, when John Doe-1 admitted to cheating on the CDL Test, the DFI investigators noted John Doe-1 said the individual who helped him cheat drove a black Toyota Camry, the same make and model as the Target Vehicle.   John Doe-2 later told NYPD officers that he and a friend were assisted in the attempt to fraudulently obtain a CDL by "Ruslan," whom there is probable cause to show is defendant RUSLAN SADIKHOV.

23.     The Device also contained videos of the SADIKHOV in a vehicle, consistent with the Target Vehicle, as SADIKHOV was studying a DMV test booklet. Another video depicts SADIKHOV in a vehicle, consistent with the Target Vehicle, employing a device that I know is used to detect hidden cameras and other covert electronic equipment.   The video is from the perspective of the hidden camera and depicts SADIKHOV using that detection device.   Based on my training, experience and participation in this and other investigations, I believe SADIKHOV was trying to use this device in order to determine whether the hidden camera could be located by the detection device.   Finally, as described above, John Doe-2 told law enforcement officers that SADIKHOV was driving a black Toyota Camry when he picked up John Doe-2, held him at gunpoint, transported him to an ATM and demanded he withdrawal money for SADIKHOV.

24.     In addition to these facts, in my training, experience and participation in this investigation as well as others, I understand that organizers such as SADIKHOV often use a vehicle to prepare an applicants to cheat on the CDL Test in order for the organizer to outfit the applicant with the necessary devices and equipment without drawing attention to this process.

<u>CONCLUSION</u>

25.     Based on the foregoing, I respectfully request the court to issue an arrest warrant for the defendant RUSLAN SADIKHOV for a violation of Title 18, United States Code, Section 1349, and a warrant to search the Target Vehicle, as specified in Attachment A, to seize the items and information specified in Attachment B.

WHEREFORE, your deponent respectfully requests that the defendant RUSLAN SADIKHOV, be dealt with according to law.

I further request that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including this Affidavit.   As described above, the investigation is ongoing and not known to RUSLAN SADIKHOV. Accordingly, there is good cause to seal these document because their premature disclosure may seriously jeopardize that investigation by allowing SADIKHOV to flee before he can be arrested and the search of the Target Vehicle can be conducted.

Joseph Loecher
Special Agent, Federal Bureau of Investigation

Sworn to before me by telephone this
1st day of September, 2021

*Marcia M. Henry*

THE HONORABLE MARCIA M. HENRY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

**<u>ATTACHMENT A</u>**

<u>Items to be Searched</u>

The Target Vehicle is a 2020 black Toyota Camry with New York license plate T709049C,

including the trunk and any locked and/or closed containers.

## ATTACHMENT B

### Items to be Seized

Any evidence, fruits and instrumentalities of violations of 18 U.S.C. § 1341 and 1349 (mail fraud and mail fraud conspiracy) and 1951(a) (Hobbs Act robbery) (the "SUBJECT OFFENSES") from the period of April 1, 2020 to the present, including:

1.      All records, notes, documents, communications or materials pertaining or relating to commercial driver's licenses;

2.      Any bank records, account information, wire transfers, invoices, business records, or other financial documents relating to the SUBJECT OFFENSES;

3.      Contact information and records of communications with any member or associate regarding commercial driver's licenses;

4.      Any documents and/or records demonstrating ownership, control or possession over the property to be searched;

5.      Firearms, ammunition, or related accessories;

6.      Proof of firearm ownership; and

7.      Evidence related to the receipt, storage, or disposition of firearms, including but not limited to receipts, delivery records, sales slips, packaging material.